Let's hear Sullivan-Mestecky v. Verizon, et al. Mr. Stokes, go ahead. Good morning, your honors. May it please the court. John Stokes for the appellant. Christine Sullivan-Mestecky. The core issue on appeal is very simple. The district court dismissed Ms. Sullivan-Mestecky's ERISA fiduciary breach claim for one reason. It believed that participants cannot obtain make-all monetary relief to remedy a fiduciary breach under ERISA. But after Cigna v. Amara, that's no longer true. Participants can obtain, in essence, money damages, which is monetary compensation to remedy a fiduciary breach. That's what every circuit has held following Cigna, including this one. So we ask this court to correct that clear error, vacate, and remand for the district court to address the remaining issues, whether a fiduciary breach occurred, and if so, what the relief should actually be. The defendants kind of merits arguments on the remedy issue. We think it really are just totally wrong following Cigna. We think their only real argument here is waiver. And so I'd like to go straight to that point and just say there's absolutely no waiver here. It is unquestionable. Everybody understood exactly what Ms. Sullivan-Mestecky was asking for before the district court. She was asking for payment of the full remaining value of the life insurance policy. That's what the district court thought. And what you want is $679,000. It would be $582,600, we think. $582,000? That's the value of the reduced policy from when she turned 70. So once she turned 70, she received notices saying, your policy is being reduced from $679,000 to $582,600. So anyway, there's really no doubt that she raised the issue. It's exactly what Verizon and Prudential described her as asking for. The district court just simply erred in saying, you can't get monetary compensation under ERISA. And for the reasons that we cited in the brief, all of the cases addressing analogous facts, including Kenseth and Geralds and McCravey and Silva, have said, no, absolutely, you can get what Kenseth actually just calls money damages under a surcharge theory. So we think that the answer on the remedy issue is clear, and that's the only one that this court needs to address. Your Honors can leave the breach question for the district court in the first instance, which is actually what ended up occurring ultimately in Kenseth and Geralds and McCravey and Silva. But, of course, that is the other aspect of the claim that will need to be addressed at some point. So I'd like to say just a few words about the breach issue. To start at the beginning, Verizon and Prudential agree that they're fiduciaries with respect to the policy, and that that means that they had a duty to act prudently and to communicate accurately with Ms. Sullivan. And I don't think just taking that baseline standard, those baseline duties, that one can really look at the facts here and draw any conclusion except that Verizon and Prudential failed in those duties. So to briefly recount, we have three written notices. But their failure was essentially to tell her she had something that she didn't have. Well, that's correct. The duty is to communicate accurately and to act prudently. But you're saying, but if you make a mistake and say, well, you've got a million-dollar policy instead of a $500,000 policy, that was inaccurate, and as the result of all of this, you're going to have to, you're going to be liable for providing her a million-dollar policy. Well, that would be, I think there would certainly be a breach there. Now, you might in some factual circumstances have to have a discussion about causation and harm on the rent. If you misrepresent the policy to her and what the outcome of the policy is, the actual recovery, then you're saying that that could be a basis for equitable relief, right? That's correct. And one theory I thought of was that equitable estoppel might occur here because she plainly wanted to have sufficient life insurance. That's exactly right, Your Honor. And by being told that you had sufficient life insurance time after time, when she was not really equipped to get into all the details of the contract, of the policy, she obviously forewent any opportunities to go find insurance elsewhere. That's exactly right. And that's clearly alleged in the complaint, if Your Honors look to A, A being appellant's appendix 180. That's independent of the contract, really, of the policy. That's a separate cause of action or theory of equitable relief. Well, that's exactly right. It's one of the three kind of rubrics identified by the Supreme Court in Cigna, the other two being surcharge and reformation. Any of the three theories, for the reasons we described in the brief, kind of we think can get us there. But we certainly think estoppel makes sense, and we think that surcharge is even clearer, but for essentially the same reasons. She was told repeatedly she had this policy in sort of official enrollment materials that she received from the fiduciaries themselves, and then on the phone on multiple occasions, and so in reliance on those. Yeah. I mean, you can't look at this record and think that she wasn't trying to figure out what the situation was. She was calling them all the time to ascertain the amount that she received. That's exactly right, Your Honor. And so I do want to address kind of. To follow up on Judge Walker's line of inquiry, so what exactly do you want from us? That is, what's the decretal language that you seek? You'd like us to vacate the judgment, right? That's correct. And tell us what, in your view, that means going forward. Well, so at minimum, we'd ask that Your Honors correct the error with respect to the remedy issue. That's the only one that the district court, the only. Meaning that money damages are available. That's correct. We think that. Now you may be expanding your request based upon some questions that have been asked to perhaps ask us to address the fiduciary breach point. Well, we do think that the answer is clear enough here based on the record that was developed before the district court, that Your Honors could essentially direct the entry of judgment for Ms. Sullivan-Misteki to the district court. Now, that's not. We articulated clearly enough, I'll say the standard, what you have to show to show a serious enough fiduciary breach in order to get the relief you're asking for. I mean, it has to be, I think we've only gone to sort of intentional. We've only held that intentional misrepresentations rise to that level, right? Well, I'm not sure that that's correct. I think that there are a number of cases that don't necessarily involve intentional misrepresentations if they're coming from the fiduciary themselves. And the estate of Becker and Enri DeRogatis cases, they're talking about unintentional misrepresentations coming from an agent of the fiduciary. Do you need to say anything more about that in order to give the district court some guidance when it gets this case back? I don't think so. So just a couple of quick points about DeRogatis. There are two of them. First, what does DeRogatis actually stand for? And second, how it would actually apply here. So we don't think that it stands for this incredibly broad proposition that as long as your summary plan document is clear, the fiduciary is kind of forever free to send misleading notices, newsletters, and the like to beneficiaries. I don't think they will speak for themselves, but I don't think that Verizon and Prudential's, at least their presentation in the briefs, even argues for that broad of a rule because I think it would be a massive departure from the way that ERISA works and would, in effect, eliminate that independent duty to act prudently and to communicate accurately. But I just want to say— The curious thing about this case is that as she was asking these questions, I'm sorry, I'm going back a little bit, but as she was asking all of these questions, they were suspicious of the amount of the recovery, but they didn't do anything about it. So it wasn't that they weren't alert to the possibility of a mistake in time to do something about it while the decedent was still alive. That's exactly right, Your Honor. And, you know, that only changed once she died and it was time to pay out on the policy. It's remarkable. If you look at the note that the Prudential employee sent saying, could we please double-check this to make sure that the amount is right following her death, it's virtually identical to what the employees were saying internally while she was alive when she was calling to ask questions. But now that it was Prudential's interests on the line, they apparently discovered this mistake. And, I mean, I think that just illustrates that that's kind of the opposite of how fiduciary duties are supposed to work. And one more quick thing about Derogatus, if I may. Even if Your Honors think, in light of Derogatus, that the summary plan description has to have some kind of ambiguity, we absolutely have that here. I direct Your Honors' attention to page 343 of our appendix. It's the summary plan description that Verizon and Prudential extensively cite and quote from in the briefs. And it specifically says, and I'm going to quote now, the plans may be amended by publication of any SPD, summary of material modification. And here's the important part. Enrollment materials or other communication relating to the plans. And that is exactly what we have here. Enrollment materials and other communications relating to the plans that expressly tell Ms. Sullivan she had the full policy. I mean, the first thing she got was a, quote, retirement enrollment worksheet from Verizon. So at minimum, at bare minimum, a person who had received that SPD and seen that language and had in her hand something with Verizon stamped on the top called a retirement enrollment, retiree enrollment worksheet that said the full policy would be reasonable to make a phone call to the people that the plan directs her to call. And at that point, and this is kind of the court teaching of Derogatus, they had an obligation, the defendants, to make sure she got accurate information. And suffice to say she didn't. So for those reasons, we ask that Your Honors vacate and remand. Thank you.  Thanks. May it please the Court. My name is James Hawley, and I represent Verizon Communications in this appeal. I think from all the briefing and from the presentation from Ms. Sullivan, Ms. Stecke's counsel this morning, it's clear that although the appeal in this case does include an appeal from the part of the district court judgment denying the claim for benefits under Section 502A1B, plaintiff pretty much agrees that Ms. Sullivan, Ms. Stecke, that claim was properly granted summary judgment and Verizon did not arbitrarily and capriciously deny that claim based upon the administrative record. If you look at the materials in the summary plan description and in the plan, Ms. Sullivan, Ms. Stecke clearly did not meet any of the eligibility requirements for enrollment. And even if she did. No, no, we're not looking at it. But what your adversary is saying is that we don't look to the plan. We look to the level of the communications that occurred between Verizon's agent and the plaintiff. Correct. And that relates to the 502A3 claim. I'm just preliminarily noting that there seems to be an abandonment of the claim for benefits under 502A1B or that claim is not really seriously being pressed. So turning to the 502A3 claim, Your Honor, I think there's a continual merging of the parties involved in this case when we're talking about the defendant's conduct. Plaintiff's mother, Ms. Sullivan, was enrolled in the plan mistakenly by Aeon Hewitt. The communications that took place between Ms. Sullivan all were communications with Aeon Hewitt. Aeon Hewitt's conduct in mistakenly enrolling her to begin with was compounded by a data entry mistake that occurred in the 20 years after Ms. Sullivan left employment where her $18,600 annual salary was imputed as a weekly salary resulting in an annual salary on the books of $900,000. So even if she had been properly enrolled, she should have been enrolled for $18,000, not $679,000. All that conduct, all those misstatements that are alleged were by Aeon Hewitt. Aeon Hewitt, ironically enough, is no longer a party in this case because the district court dismissed Aeon Hewitt finding that it was a non-fiduciary. The district court certified that ruling under Rule 54 and there was no appeal and plaintiff in this court has confirmed that it is not appealing that adverse judgment dismissing Hewitt. So in terms of Hewitt's status, Hewitt is a non- Hewitt was Verizon's agent just like the employees who were alleged to make misstatements. Verizon might have a malpractice action, put bluntly, against Hewitt and you could third party them in if you're not out of time and that sort of thing. But the problem, Your Honor, is under derogatis, there's a clear and unequivocal holding in that case that if a non-fiduciary agent makes misrepresentations or engages in misleading conduct, that cannot support a claim for breach of fiduciary duty under 502A3 unless there are ambiguities or lack of clarity in the plan documents. So we don't have any ambiguities or lack of clarity in these plan documents. What about the fact that the plan description can be amended by enrollment materials? Your Honor, the enrollment materials were all prepared by Hewitt. And so that would be a way to bootstrap your way around the holding in derogatis if you can say that Hewitt, a non-fiduciary- Well, and those enrollment materials, by the way, Your Honor, that are in the record, they enrolled her for coverage at one times pay. And then they erroneously went on to say $679,000. So where do we go with that? It's undisputed that her pay, her annual compensation, which is the benefit that she should have been enrolled in if she was enrolled at all, should have been for $18,600, not- Leaving all these plan documents aside, what about the fact that your agent, fiduciary or not, was making representations to her that she had a certain amount of coverage, which she relied on to her detriment? I view those alleged misstatements by Hewitt the same way I view the alleged misstatements at issue in derogatis. Derogatis had plan documents that said, if you have questions, go to the benefit department and they'll clarify things. Derogatis made that distinction between a lack of ambiguity. The derogatis holding could not be clearer because we had two cases. One case, the plan documents were clear, and the misrepresentations occurred by non-fiduciary agents, and the court upheld dismissal of that claim. The other companion case, the documents were viewed as unclear, and so the misrepresentations were viewed as sufficient to form a basis for a finding of breach of fiduciary duty. So we don't have to really go too far to figure out what happened in derogatis because we had those two results. The only distinguishing feature being that the plan documents were unclear in one case where liability could go forward. The plan documents were clear and unambiguous in the other case, and the case was dismissed. So your position, I take it, is that Ann Hewitt was not a fiduciary, and yet they were an agent of a fiduciary at the same time. And so how does one square that? Well, by the way, the court squared it in derogatis, Your Honor. The employees that were accused of making the misrepresentations were viewed as non-fiduciary agents, and their misstatements cannot form the basis for a breach of fiduciary duty claim unless the documents are unclear. That was the holding in derogatis. I think derogatis is dispositive of this case. Okay. Thank you, Your Honor. Let me ask you a question about that, about derogatis for a moment. Is it not the case that derogatis itself and other circuits have suggested the possibility that there might be a basis for equitable relief in circumstances like these, not perhaps under the terms of the plan itself, but on the basis of other equitable principles? Your Honor, to answer, obviously, the starting point with that question is AMARA. And if you look at all the post-AMARA decisions in this circuit, they always involve situations where they were truly awarding equitable relief, even though the effect might be the participants get some money. For example, in the Augsburg case, the Footlocker case, the employer had changed from a defined benefit to a cash balance plan, and the remedy employed to that they had actually concealed the effect of that, and the remedy was to impose a new formula that eliminated that wear-away resulting from the conversion from a defined benefit to cash. AMARA, the same way. I think the remedy ultimately imposed was A plus B. I think it's important to note that AMARA did not overrule Knudsen. It refined it a little bit. It articulated some standards for determining what is equitable relief. But at least in the post-AMARA Second Circuit cases, it almost always involves class-wide injunction of future conduct, as opposed to what Judge Feuerstein characterized as a rehashed claim under 502A3, which is in reality a claim for payment of money damages under 502A1B. Thank you. Thank you, Your Honor. Go ahead. Good morning, Your Honors. May it please the Court. Kirsten Grossman on behalf of Freeman and Serra, representing Prudential, the Tax Authority of America. And I just wanted to first note also that it does appear that the plaintiff has abandoned the 502A1B claim. With respect to Prudential, that would be the breach of Prudential's duty to pay the claim for individual benefits. In fact, that claim would be pointless here, because pursuant to Section 5.4.1 of the plan, this is the GLI plan, which we assert is completely unambiguous, and plaintiff never until today asserted otherwise. The benefits were calculated at one times the benefit-bearing wage, which was Ms. Sullivan's salary at the time she went out on disability, was $18,600, rounded up to the nearest $1,000, which was $19,000, reduced to a certain percentage based upon her age at the time of her death. That was $11,400. In this case, Ms. Sullivan's beneficiary received $11,400. So there is absolutely, unequivocally no 502A1B claim. So I'm just going to move back over to the 502A3 claim and just make a couple of differentiating points with respect to Prudential Insurance Company of America. First of all, I want to dispense with any notion whatsoever that Prudential somehow had some duty to come in and detect this error before she died. In fact, Prudential is a fiduciary in this case. They were the claims administrator. What does that mean? They come in once there's a claim. A claim has to be made. So in this case, Prudential came in, and the only thing we did wrong, wrong being in quotes, was come in, realize there was a mistake, and fix it. That's what Prudential did wrong. Prudential had no duty to detect this error any time before that. In any event, definitely no breach of fiduciary duty here. Certainly Prudential did not make any intentional misrepresentation to any beneficiary or Ms. Sullivan herself as to any changes in any plan. Now, and I want to point out with respect to an unintentional misrepresentation, which is obviously what this was, and I understand I'm talking a little bit out of school because this isn't Prudential. However, in a State v. Becker, the Second Circuit held that to impose liability on a fiduciary for an unintentional misrepresentation, there has to be unclear plan document plus a misrepresentation by the fiduciary's agents. Well, we didn't make any misrepresentation. We found the misrepresentation and fixed it. And there has to be an unclear SPD. We do not have the relationship, if any, between Aon Hewitt and Prudential. None. None. Aon Hewitt was the non-fiduciary agent of Verizon. They were not a fiduciary, so I concur with Verizon that, in fact, Verizon has no liability here as well. However, we had no relationship with them whatsoever. Prudential's only role in this whatsoever was that we came in as the claims administrator, and as such, we are a fiduciary as well, meaning we have a fiduciary duty to properly pay the claim. That is exactly what we did. And with respect to even if there was a breach of fiduciary duty, I just want to point this out because I have a minute left, so why not use it? Even if there was a breach of fiduciary duty, let's just say there was, the most the plaintiff could get, I assert, was the benefits she was entitled to under the plan. So let's go back to 502A1B. What was the plaintiff entitled to under this plan? Why not remand to the district court for making that determination? Because it's futile, Your Honor. It's absolutely futile. Why is it futile? The reason it's futile is because the plan is clear, and, in fact, if you look at appendix submitted by the plaintiff, page 839, which was a part of 8346 through 8349, which was the retirement enrollment worksheet, which has Verizon's name at the top, although it was submitted by Aeon Hewitt. It, in fact, describes the enrollment as one times pay. I understand the number was wrong because someone inputted it incorrectly back in 1994, but it says there one times pay. And, in fact, that's exactly what she was entitled to if, in fact, she was properly enrolled. I understand Verizon's making the argument, and on appeal, they determined that, in fact, with only eight and a half years of service, she wasn't even entitled to be enrolled in the plan. However, they weren't going to take back her $11,400, so they let the beneficiary keep it. But in this particular instance, the very, very most she could have been entitled to under any interpretation of the plan whatsoever was $11,400. Ms. Sullivan and Ms. Stecke, the beneficiary, received $11,400. She has no relief here. Thank you, Your Honor. Thank you. Mr. Stokes. A few quick points. First, the communications. I would direct, Your Honors, to A346 to 352. They say that they are from Verizon and from Prudential. Those are fiduciary communications. They say delivered in the corner. In the corner, it says delivered by Aon Hewitt. The question is, what would a reasonable beneficiary looking at those communications think she was seeing? Hold on a second. So A36? 346. 346. Yes, okay. It says Verizon right on top. It's on Verizon letterhead. Okay. So these are communications. Walk us through this. So the first one is, the core point here is just, if you're a beneficiary looking at this document, you would think that it is from Verizon, not that it was something that came from Hewitt. You would think that it was a fiduciary communication. And that's the core point in all of these notices that are in the record from 346 to 352. And I would just note that one of those communications is from Prudential itself. After she died, that's not the first time that Prudential got involved. They sent her a notice. I believe it was December 1, 2011. And it says, your policy, your existing policy is going to be reduced by $97,100. So I don't think that Prudential can say, well, we were a fiduciary, but it wasn't our problem if there was a mistake. They bore a fiduciary duty. Now, they may say, well, we were relying on Verizon to get that right, but that's a problem between Prudential and Verizon. That's not a problem for Ms. Sullivan, Ms. Stecke, or Ms. Sullivan here. And just quickly, on the one-time pay point, at A346, what it says is literally 1x pay, $679,000. If you're, again, a reasonable beneficiary looking at that, there are many things you might think, including it's a one-time payment of $679,000. That's not some kind of unambiguous description of the planned terms. And quickly, on Derogatus, even if you did think that these were somehow communications from Hewitt, the whole point of Derogatus is that when you have something in the SPD, in the summary plan description, that could lead a beneficiary to reasonably but incorrectly think that she was entitled to what they were telling her, then there's going to be liability. And that's absolutely what we have here in light of the language saying that enrollment materials and other communications can change the plan. And one final point. The idea of these remedies is not to just give the beneficiary what she's entitled to under the plan. The whole point of these equitable remedies is to give the beneficiary what she was promised in the misleading communications. And that's what we're asking the Court to do here. So for those reasons, we'd ask that Your Honors vacate and remand. Thank you. We'll read your decision.